UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

WILLIAM RODRIGUEZ and HEIDY                CIVIL ACTION
CELIS-PINEDA

VERSUS                                     NO: 10-3037

SOUTHERN FIDELITY INSURANCE                SECTION: R(2)
COMPANY


                           **ORDER AND REASONS**

In this Hurricane Gustav case, defendant Southern Fidelity Insurance Company ("SFIC") has moved for summary judgment.[1] Because SFIC has not shown that it was prejudiced by plaintiffs' failure to submit to examinations under oath, its motion is DENIED.

**I.  Background**

This case concerns an insurance dispute over the damage caused by Hurricane Gustav to plaintiffs' property in New Orleans.  On September 1, 2008, the home of plaintiffs William Rodriguez and Heidy Celis-Pineda was damaged when the hurricane passed through Orleans Parish.  The property was insured by SFIC under a homeowners' policy, with a policy limit of $248,000 for damage to the dwelling (Coverage A) and a deductible of $2,500 or

---

   [1]   R. Doc. 13.

two percent of Coverage A, or $4,960, if the loss was caused by a hurricane.[2]

After plaintiffs reported the loss on or about September 11, 2008, SFIC hired United Storm Adjusters ("USA") to perform an inspection of the property.[3] USA determined that the replacement cost of the damage to the dwelling was $14,602.73, and that the replacement cost of the damage to the contents was $242.50.[4] After building in the contractor's overhead and profit and the Louisiana tax on materials, USA determined in an October 28, 2010 report that the total replacement cost was $18,345.89 and that the total actual cash value was $15,627.77.[5] After subtracting the $4,960 deductible from the actual cash value of the damage, USA determined that the net claim was $10,667.77.

On November 20, 2008, SFIC sent a $7,476.68 check to plaintiffs for damage to the dwelling.[6] This was calculated by starting with a replacement cost of $14,602.73 and subtracting

---

[2]   R. Doc. 13, Ex. B-1.

[3]   R. Doc. 19, Ex. A.

[4]   R. Doc. 19, Ex. B, at 6.

[5]   *Id.* at 7.

[6]   R. Doc. 19, Ex. C.

$2,166.05 in recoverable depreciation and the $4,960 deductible.[7] SFIC also sent a $842.50 check to plaintiffs, covering $242.50 in damaged contents and $600 in additional living expenses.

Plaintiffs were unsatisfied with these payments, and plaintiffs' counsel hired an estimator named David Dye to re-inspect the property.  Dye found that plaintiffs had a claim of $79.365.33.[8]  Defendant then hired Trinity Insurance Services to conduct another inspection of the property.  On September 28, 2009, Trinity estimated that the replacement cost of the damage was $28,820.70 and that the actual cash value, minus the deductible, was $21,877.86.  On October 19, 2009, SFIC offered to settle the claim for $16,384.02, which represents the replacement cost estimated by Trinity minus the deductible and the amount already paid to plaintiffs.[9]  Plaintiffs did not accept this offer.

On October 23, 2009, SFIC sent plaintiffs the first in a series of letters demanding that plaintiffs submit to examinations under oath ("EUOs") and provide certain documents.[10]

---

[7]     *Id.*

[8]     R. Doc. 21, Ex. A-4.

[9]     R. Doc. 19, Ex. H.

[10]    R. Doc. 13, Ex. B-2.

The October 23 letter states that it is intended to "confirm" that the examinations would take place on November 12, 2009, but plaintiffs deny that they had previously agreed to be examined on that date. In the letter, SFIC refers to the policy's cooperation clause, which is found in the section of the policy entitled "Conditions." The cooperation clause states:

> 4. Your Duties After Loss.  In case of a loss to covered property, you must see that the following are done . . .
>
> d. as often as we reasonably require
>
> (1) show the damaged property,
>
> (2) provide us with records and documents we request and permit us to make copies, and
>
> (3) submit to an examination under oath, while not in the presence of any other named insured, and sign the same . . .
>
> 11. Suit against us.  No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss[.][11]

In an October 27, 2009 phone call between counsel for the parties, SFIC again requested that plaintiffs submit to an examination under oath. On October 29, plaintiffs' counsel replied by letter as follows:

> I will not allow my clients to submit to an EUO . . . I am concerned that submission to an EUO would ultimately be detrimental to my clients insofar as the areas of

---

[11]   R. Doc. 13, Ex. B-1 at 14-16.

4

      questioning may not be limited to the facts and circumstances surrounding the above-referenced claim."[12]

Plaintiffs' counsel proposed, as an alternative to an EUO, that SFIC send plaintiffs written questions. Counsel also noted that, should the claim go to litigation, plaintiffs would make themselves available for depositions, as required. On November 19, 2009 and January 8, 2010, SFIC requested again that plaintiffs submit to examinations under oath and produce the relevant documents.[13] Then, on March 2, 2010, SFIC sent plaintiffs an unconditional tender in the amount of $16,384.02 but reiterated its requests for examinations under oath and the production of documents.[14]

    Plaintiffs filed suit against SFIC on August 31, 2010, and the suit was removed to this court on September 13.[15] Plaintiffs allege that defendant breached multiple statutory duties under Louisiana law, that it acted in bad faith, and that it breached the insurance policy. Defendant now moves for summary judgment.

**II.  Standard**

---

    [12]    R. Doc. 13, Ex. B-3.

    [13]    R. Doc. 13, Ex. B-4 & B-5.

    [14]    R. Doc. 13, Ex. B-6.

    [15]    R. Doc. 1.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a [partial] directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion

by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. Analysis**

SFIC contends that plaintiffs gave up their right to sue to enforce the policy by refusing to comply with its request to submit to examinations under oath. As SFIC notes, the policy requires that plaintiffs cooperate with the insurer by, among

other things, submitting to EUOs.  It is undisputed that plaintiffs did not comply with that requirement.

Under Louisiana law, "failure to fulfill policy requirements that are conditions precedent to an insurance contract precludes suit under the policy."  *Mosadegh v. State Farm Fire and Cas. Co.*, 330 Fed.Appx. 65, 66 (5th Cir. 2009) (citing *Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La. App. 4 Cir. 1992)); *Robbert v. Equitable Life Assur. Soc.*, 46 So.2d 286, 292 (La. 1950)).  But this Court has observed that

> a cooperation clause is emphatically not an escape hatch that an insurer may use to flee from liability.  It is most certainly not the law of Louisiana that any failure to comply with the policy conditions, no matter how trivial, will relieve an insurer from liability under the policy it drafted and issued.

*Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010).  Dismissal of a suit before trial because of the breach of a cooperation clause "is a draconian remedy which [courts] do not ordinarily favor."  *Lee*, 607 So.2d at 685.  An insurer may be relieved of liability only if the breach of the cooperation clause is material and prejudicial.  *Id.*  (citing *Williams v. Lowe*, 831 So.2d 334, 336 (La. App. 5 Cir. 2002); *Desadier v. Safeway Ins. Co.*, 712 So.2d 925, 928 (La. App. 3 Cir. 1998)).  The burden of proving "actual

prejudice" falls on the insurer. *Trosclair v. CNA Ins. Co.*, 637 So.2d 1168, 1170 (La. App. 4 Cir. 1994).

Here, SFIC has not shown that it has been prejudiced by plaintiffs' refusal to submit to examinations under oath.  SFIC asserts broadly that because of plaintiffs' delays, it can no longer "obtain relevant information concerning the loss while the information is fresh."  *Holden v. Connex-Metalna Management Consulting*, No. 98-3326, 2000 WL 1741839 (E.D. La. Nov. 22, 2000) (quoting 14 Couch on Insurance, § 199:4 (3d ed. 1999)) (asserting that allowing insurers to obtain such information is the reasonable purpose of cooperation clauses).  But SFIC did not request that plaintiffs submit to EUOs until October 23, 2009, over a year after plaintiffs reported the loss.[16]  Thus, any information SFIC could have gained by conducting the examinations it sought would not have been "fresh."

SFIC also argues that plaintiffs' actions have caused it prejudice by forcing it to retain counsel to defend this suit at significant expense.  SFIC's need to retain such counsel was caused by plaintiffs' decision to file suit, however, not by their unwillingness to be examined.

---

[16] As plaintiffs note, this request was phrased as an attempt to seek "confirmation" that the EUOs would take place on November 12, 2009.

SFIC has not made a specific showing that it was prejudiced by plaintiffs' failure to submit to examinations under oath, and its general assertions to that effect are insufficient. In *Trosclair v. CNA Ins. Co.*, 637 So.2d 1168, 1170 (La. App. 4 Cir. 1994), the court denied an insurer's motion for summary judgment for failure to cooperate when the insurer "argued general prejudice, but has not shown how it is prejudiced, nor . . . shown any particular prejudice." *Id.* at 1170; *see also Spindel v. Bankers Specialty Ins. Co.*, No. 10-4110, 2010 WL 5439706, at *3 (E.D. La. Dec. 28, 2010) (denying summary judgment because the insurer offered no admissible evidence that it could no longer obtain relevant information about the claim); *cf. Mosadegh v. State Farm Fire and Cas. Co.*, No. 07-4427, 2008 WL 4544361, at *4 (E.D. La. Oct. 8, 2008), *aff'd*, 330 Fed.Appx. 65 (5th Cir. 2009) (insurer adequately showed that it was prejudiced by plaintiffs' failure to submit to examinations under oath). Because SFIC has failed to show that it was prejudiced by plaintiffs' failure to submit to examinations under oath, SFIC's motion for summary judgment must be denied. The Court need not address plaintiffs' further argument that it was not required to submit to SFIC's examination requests because SFIC had already materially breached the policy.

**IV. Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is DENIED.

New Orleans, Louisiana, this __23rd__ day of February, 2011.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE